# Commonwealth vs. Donald Whitlock.

No. 07-P-135.

Hampden. December 2, 2008. - May 28, 2009.

Present: McHugh, Brown, & Vuono, JJ.

*Controlled Substances. "School Zone" Statute. Practice, Criminal,* New trial,
Assistance of counsel. *Evidence,* Exculpatory, Inability to obtain evidence.

A private investigator's affidavit did not constitute newly discovered evidence
casting doubt on the defendant's convictions of distribution of a controlled
substance and of doing so in a school zone, where the defendant failed to
show that evidence contained in the affidavit of the presence in the neighbor-
hood of a third person who was similar to the defendant in race, size,
build, and age was material and credible enough to warrant a conclusion
other than the one reached after trial; and where the defendant failed to
establish that the evidence was not reasonably discoverable at the time of
trial. [323-324]

The criminal defendant's trial counsel was not ineffective for failing to pursue
a motion to suppress identification evidence, where the motion had a minimal
chance of success; further, even if an ordinary fallible lawyer would have
introduced certain evidence that was, in part at least, mildly exculpatory,
counsel's failure to do so did not deprive the defendant of a substantial
ground of defense. [324-325]

At the trial of indictments charging the defendant with distribution of a
controlled substance and with doing so in a school zone, the judge did not
abuse his discretion in admitting in evidence a measurement derived from
a computer program that used maps maintained by the city, where a police
captain's testimony regarding his observations of the measurement was not
hearsay; where the captain was familiar with the location of the school in
question, and thus, the fact finder could infer that the captain relied on his
own observations to determine that the computerized map presented a grossly
accurate portrayal of the school and its surroundings; where the testimony of
a second witness provided a basis for concluding that one of the points used
in the captain's calculation actually was on school property; and where the
record sufficiently established the accuracy of the computer program and the
captain's competence in using it. [325-329]

There was no merit to a criminal defendant's claim that the Commonwealth
lost or destroyed exculpatory evidence. [329]

INDICTMENTS found and returned in the Superior Court Depart-
ment on February 18, 2004.

The cases were heard by *Peter A. Velis*, J., and a motion for postconviction relief, filed on April 20, 2007, was considered by him.

*Allison J. Koury* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

McHugh, J. Following a trial without a jury, the defendant, Donald Whitlock, was convicted on one count of distribution of a controlled substance (subsequent offense), see G. L. c. 94C, § 32A(*d*), and one count of distribution of a controlled substance in a school zone. See G. L. c. 94C, § 32J. Thereafter, he filed a motion for a new trial, which the trial judge denied. He now appeals from both adverse rulings, raising issues of newly discovered evidence, ineffective assistance of counsel, sufficiency of evidence, and destruction of exculpatory evidence. For the reasons that follow, we affirm both the convictions and the denial of the new trial motion.

*Trial evidence.* The Commonwealth presented the following evidence at trial. In August, 2003, Officer Pedro Soler of the Springfield police department made an undercover purchase of "crack" cocaine from a "very tall black male" who identified himself as "Woody." Later, during the trial, Officer Soler identified that individual as the defendant, Donald Whitlock. Officer Soler testified that he observed the defendant standing on a street corner at around 11 P.M. and asked him if he had any "20's," a street term for twenty dollars' worth of crack cocaine. Upon receiving an affirmative answer, and at the defendant's suggestion, Officer Soler followed him to an empty apartment at 49 School Street where the defendant sold him the drugs that led to the defendant's arrest and resulting trial. While on the witness stand, Officer Soler described multiple instances during his approximately five-minute encounter with the defendant during which he observed the defendant's face.

When Officer Soler returned to the police station, he discussed the sale with a colleague, Officer James Jackson, and described the seller. Officer Jackson told Officer Soler that the description "sounded like a person known to me as Donald Whitlock." Officer Jackson then showed Officer Soler a file photo of the defendant, from which Soler identified the defendant as the person who

sold him the cocaine. Officer Soler also noticed that the file listed the defendant's address as 49 School Street.[1] A complaint against the defendant issued three months later.

After a bench trial in June, 2005, a judge of the Superior Court found the defendant guilty of cocaine distribution and violating the controlled substances act within 1,000 feet of a school.[2] The defendant appealed. After delay in preparing the transcript, the case was docketed here in January, 2007. That April, we granted the defendant leave to move for a new trial and stayed appellate proceedings so that he could do so. In January, 2008, we vacated the stay because no action had been taken on the new trial motion. The next month, though, the trial judge issued a written opinion denying the motion and we consolidated the defendant's appeal from the denial of the new trial motion with his direct appeal.

*Discussion.* As noted, the defendant presents four claims for our review. First, he asserts that newly discovered evidence casts doubt on his conviction. Second, he claims that, in two respects, he received ineffective assistance of counsel. Third, he challenges the introduction of a school-zone measurement based on computerized maps maintained by the city of Springfield. Finally, he claims that the Commonwealth lost or destroyed exculpatory evidence. We think it helpful to discuss all those claims in the context of the new trial motion where they all were raised, though, as the following discussion reveals, several were raised on direct appeal as well.

The law governing new trial motions is familiar. A judge may grant a new trial when "it appears that justice may not have been done" after making "such findings of fact as are necessary to resolve the defendant's allegations of error of law." Mass.R. Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). A judge may rule on a new trial motion based on "facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass.R.Crim.P. 30(c)(3), as appearing in 435 Mass. 1502 (2001). We review the judge's decision

---

[1]At trial, the defendant presented evidence that he had been evicted from 49 School Street before the night on which the sale occurred.

[2]The defendant pleaded guilty to the subsequent offense portion of the cocaine distribution charge.

for abuse of discretion, *Commonwealth* v. *Goodreau*, 442 Mass. 341, 348 (2004), and extend special deference where, as here, the motion judge also served as the trial judge. *Commonwealth* v. *Waters*, 410 Mass. 224, 231 (1991).

a. *Newly discovered evidence.* The evidence that the defendant claims is newly discovered is contained in a private investigator's affidavit. The affidavit states that, in 2003, an individual named Woodrow, known in the community as "Woody," lived one building away from 49 School Street, the location of the sale about which Officer Soler testified.[3] According to the affidavit, Woodrow, like the defendant, was a black male, over six feet tall, thin, and approximately fifty years old. The defendant claims he obtained this information through a postconviction investigation.

In pressing a claim based on newly discovered evidence, a defendant must show that the new evidence "casts real doubt on the justice of the conviction." *Commonwealth* v. *Grace*, 397 Mass. 303, 305 (1986). Further, the defendant must establish that the evidence was "not reasonably discoverable . . . at the time of trial." *Id.* at 306. Finally, the judge must find "substantial risk that the [fact finder] would have reached a different conclusion had the evidence been admitted at trial." *Ibid.*

The judge rejected the defendant's proffer of newly discovered evidence, saying the defendant had failed to show that evidence of Woodrow's presence in the neighborhood was "material and credible enough" to warrant a conclusion other than the one that the judge reached after trial. As the judge reminded, "[m]erely introducing another possible suspect, without substantial admissible evidence that this person, and not the defendant, may have committed the crimes, does not warrant a new trial." *Commonwealth* v. *Lopez*, 433 Mass. 406, 416 (2001). Apart from similarity of name and appearance, and proximity of address, the defense provided no evidence that Woodrow, and not the defendant, was the person who sold the drugs to Officer Soler.

---

[3] The investigator stated that he obtained Woodrow's address from a June, 2003, arrest report. He also stated that Woodrow had been incarcerated and submitted an offender detail report from 2006. The new trial motion, however, did not reveal whether Woodrow was incarcerated when the sale occurred and the Commonwealth supplied the motion judge with no information in that regard.

Additionally, we see no abuse of discretion in the judge's finding that the defendant failed to establish that the evidence regarding Woodrow was newly discovered, i.e., not reasonably discoverable by the time of trial. The defendant acknowledges that his counsel asked Officer Jackson at trial whether he knew an "individual by the name of Woodrow." Furthermore, the defendant submitted an affidavit from his former girlfriend in which she stated that Woodrow lived in the area at the time of the offense, went by the street name "Woody," and resembled the defendant. The defendant has not shown why he could not have produced her testimony at trial.

b. *Ineffective assistance.* The defendant's ineffective assistance claim has two components. First, the defendant asserts that his counsel improperly failed to pursue a motion to suppress identification evidence. Second, he claims that counsel failed to introduce exculpatory evidence. Neither claim is persuasive.

As to the unfiled motion to suppress, omitting "a motion with a minimal chance of success" does not amount to ineffective assistance of counsel, *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983), and the defendant did not "demonstrate a likelihood that the motion to suppress would have been successful." *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004). A defendant's "due process rights are not violated when the police, promptly after a criminal episode, show a defendant singly to a person for the sole purpose of identifying the wrongdoer." *Commonwealth* v. *Leaster*, 395 Mass. 96, 102 (1985). Therefore, a one-on-one identification made promptly after the commission of a crime will not ordinarily be suppressed absent "special elements of unfairness indicating a desire on the part of the police to 'stack the deck' against the defendant." *Id.* at 103.

It may have been suggestive for Officer Jackson to show Officer Soler a single photograph after stating his belief that he knew "Woody's" identity. However, as the judge noted, Soler was an experienced undercover police officer, "obviously alert and using every opportunity he had to observe" the defendant during the purchase. *Commonwealth* v. *Russell*, 19 Mass. App. Ct. 940, 942 (1985). In those circumstances, any suppression motion simply had no realistic chance of success. See *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. 66, 69-70 (2003) (no due process violation

because the defendant did not show unfair suggestiveness based on the fact that the officer identified the defendant from a single booking photograph upon his return to the station after an undercover drug purchase).

Turning to the second prong of the ineffective assistance claim, the evidence that the defendant claims his attorney failed to introduce was, in part at least, mildly exculpatory. See *Commonwealth* v. *Castro*, 438 Mass. 160, 168 (2002), quoting from *Commonwealth* v. *Gregory*, 401 Mass. 437, 442 (1988) ("Exculpatory evidence includes 'evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness' ").

A storage locker invoice, apparently for the defendant's household furnishings, corroborates his story that he had been evicted from the apartment where Officer Soler testified that the sale took place and that he, therefore, would have had no access to it. There was other evidence, though, that he had been evicted, and all of the evidence suggested that the apartment was essentially empty. Even if an "ordinary fallible lawyer" would have offered the certificate, then, counsel's failure to do so here did not deprive the defendant of a "substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Freeman*, 442 Mass. 779, 791 (2004) (trial counsel not ineffective for failing to obtain eyewitness testimony where that testimony would have been cumulative of the testimony of another eyewitness). Evidence that the defendant wore eyeglasses was not even mildly exculpatory, as Officer Soler testified at trial that "Woody" wore glasses.

c. *School zone measurement.* The defendant's third claim is that the Commonwealth's evidence of the distance between the point of sale and the nearby Milton Bradley School should have been excluded. The distance evidence was presented through the testimony of Springfield police Captain William Cochrane. Captain Cochrane testified that he used a software program called ArcView to determine that the distance from the point of sale at 49 School Street to the school was 473.29 feet. ArcView, he testified, is basically a computerized map showing the location and

ownership of, and other information about, every parcel of land in Springfield. He obtained the program from the Springfield planning department, had been trained in its use, and had used it for about two years to determine distances in more than 150 similar cases. Each time he used ArcView, he tested the program's accuracy by having it generate the distance between two known points he had personally measured with a measuring wheel, the accuracy of which he had personally determined. Captain Cochrane also testified that he had visited the Milton Bradley School on several occasions and, inferentially, knew where it was and at least its general relation to streets laid out on ArcView's computerized map.

At the time the evidence was introduced, the defendant objected on grounds of hearsay. Later, at the close of the Commonwealth's case and after all evidence closed, the defendant moved for a required finding of not guilty on grounds that the evidence did not show that one of the points used in the measurement was on the grounds of a "school." Then, in his motion for a new trial, he argued, for the first time, that the Commonwealth failed to establish the accuracy of ArcView and its underlying data. Finally, in his appellate brief, the defendant repeats the accuracy argument but also introduces another foundation claim, this time urging that the Commonwealth failed to establish that Captain Cochrane was competent to use the ArcView program. We treat, at least briefly, each of those arguments in turn.

First of all, Captain Cochrane's testimony that 473.29 feet separated the school from the point of sale was not hearsay.[4] Hearsay requires a "statement," i.e., "an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the person as an assertion." Mass. G. Evid. § 801(a) & (c) (2008-2009). By its very nature, calculation of distance, or of weight, volume, speed, and the like, is impossible without use of a tool that has been calibrated to show a relevant unit of measure, e.g., a ruler, a tape measure, a wheel, a scale, or, at a more sophisti-

---

[4]We could stop there, for a party who offers a specific objection that is properly overruled at trial may not argue other grounds for exclusion here. See *Shafnacker* v. *Raymond James & Assocs.*, 425 Mass. 724, 735 & n.15 (1997). Because a similar issue has arisen before, see *Commonwealth* v. *Negron*, 67 Mass. Ct. 1121 (2006) (ArcView testimony admitted without objection), and is likely to arise again, however, our analysis continues.

cated level, a radar gun, a breathalyzer, or a blood test. When employed to measure something, none of those tools makes a "statement." Instead, the only "statement" is the testimony of a witness about observations of distance, speed, weight, percentage, or volume he made as a result of using the tool.[5] Testimony about the nature of the tool and the manner in which the witness used it either provides or fails to provide a foundation for admission of the resulting observation. See, e.g., *Commonwealth* v. *Sheldon*, 423 Mass. 373, 377 (1996) (although the *record* of a blood test result is inadmissible hearsay, the results may be admitted through the treating physician or the person who administered the test or both). Therefore, in each case where a witness testifies that he used a measuring tool to determine a distance, the relevant question is not whether the testimony is hearsay but whether the foundation was sufficient for introduction of the observed result.

Here, the ArcView program was the measuring tool. We think there was a sufficient foundation for admission of the measurement that Captain Cochrane testified he obtained by using that tool, though it would have been preferable to have had the program's database qualified as a business record, see Mass. G. Evid. § 803(6)(A); *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 250-252, *S.C.*, 379 Mass. 190 (1979), or to have had a competent witness describe in greater detail how the program worked and how its database was created and maintained. See Mass. G. Evid. § 104(a). See generally, e.g., *Commercial Union Ins. Co.* v. *Boston Edison Co.*, 412 Mass. 545, 548-554 (1992).

Captain Cochrane was generally familiar with the location of the Milton Bradley School, and thus, the judge could infer that he relied on his own observations to determine that the ArcView map presented a grossly accurate portrayal of the school and its surroundings. To insure the map's precise accuracy, Captain Cochrane relied on a calibration test using a known distance he, himself, had determined. See, e.g., *Commonwealth* v. *Whynaught*, 377 Mass. 14, 17-19 (1979) (discussing the need for testing to lay a foundation for admission of speed radar results); *Morris* v.

---

[5]Typically, the hearsay issue does not turn on the precise form of the testimony. For example, there is no substantive difference between testimony that "I rolled the measuring wheel from point A to point B and the dial read 375 feet" and testimony that "The distance between point A and point B is 375 feet. I know because I measured the distance with a measuring wheel."

*Commonwealth*, 412 Mass. 861, 866-867 (1992) (regulation requiring the testing of a breathalyzer before each use adequate to insure reliable results); *Commonwealth* v. *Torres*, 453 Mass. 722, 737-738 (2009) (no abuse of discretion to admit a distance obtained by using a device calibrated by measuring a known distance). A printout of the ArcView map showing Captain Cochrane's measurement was introduced as an exhibit after one Peter Hogan, the safety and security director for the Springfield public schools, testified that he had walked the school's boundaries and that the printout contained a fair and accurate representation of the boundary Captain Cochrane used as one of his measuring points. See, e.g., *Commonwealth* v. *Paige*, 54 Mass. App. Ct. 840, 843 n.5 (2002) ("[M]aps used for various municipal purposes, such as assessors' maps, may be used to establish the boundaries of school property for purposes of [G. L. c. 94C,] § 32J," the statute punishing drug offenses within 1,000 feet of a school). The distance from the point of sale to the school was less than half the distance the statute described, thus providing for a substantial margin of error in the results Captain Cochrane's calculation produced. In all of those circumstances, we think that the foundation for the distance testimony was sufficient to withstand the defendant's claim that the judge abused his discretion by admitting it. Evidentiary deficiencies of the type the defendant emphasizes[6] therefore went to the weight of Captain Cochrane's calculation, not to its admissibility.

As for whether one of the points used in Captain Cochrane's calculation was actually on school property, the testimony of Hogan, the safety and security director, provided a basis for the judge to conclude that it was.

As for the contentions the defendant raised for the first time in the motion for a new trial and on appeal, we look at the rec-

---

[6]Among other things, the defendant points to an affidavit he produced in connection with his motion for a new trial. The affidavit quotes from an admonition on the city of Springfield's Web site regarding a map found at http://www2.springfieldcityhall.com/gis/viewer.htm (last visited May 26, 2009). The admonition cautions against using the map "as a legal document" and states that "[m]ap and parcel information is believed to be accurate but accuracy is not guaranteed." The record does not show, however, that the map at the cited address is the same one Captain Cochrane used. Even if it were the same map, Captain Cochrane relied on his own calibration of the map to insure its accuracy, not on the map alone.

ord to determine whether any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 293-294 (2002). As revealed by the discussion just concluded, we think that the evidence of ArcView's accuracy and Captain Cochrane's competence was sufficiently established. Because there was no error in admission of the testimony, there necessarily was no substantial risk of a miscarriage of justice.[7]

d. *Loss or destruction of exculpatory evidence.* Finally, the defendant did not satisfy his burden to produce concrete evidence of a "reasonable possibility" that surveillance footage or the recovered drug purchase money would have helped his defense. *Commonwealth* v. *Cintron*, 438 Mass. 779, 784 (2003), quoting from *Commonwealth* v. *Neal*, 392 Mass. 1, 12 (1984).

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[7]In denying the new trial motion, the judge erroneously stated that Captain Cochrane had measured the relevant distance with ArcView *and* with a measuring wheel. That error, however, has no impact on our conclusion that the accuracy of ArcView was sufficiently established to permit Captain Cochrane's testimony of the results he obtained through use of the program.