[Cite as *Dickerson v. Miller's TLC, Inc.*, 2012-Ohio-2493.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96995**

---

## DONNA DICKERSON, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## MILLER'S TLC, INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-716199

**BEFORE:**   Celebrezze, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   June 7, 2012

**ATTORNEY FOR APPELLANTS**

Richard E. Hackerd
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Miller's TLC, Inc.**

David J. Fagnilli
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, E.
Cleveland, Ohio   44114-2654

**For Medical Mutual**

Lisa A. Pavlik
ACS Recovery Services, Inc.
1301 Basswood Road
Schaumburg, Illinois   60173

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Plaintiff-appellant, Donna Dickerson, appeals from a jury verdict awarding $68,333 in damages after reduction for comparative negligence in this personal injury action against defendants-appellees, Robert Taylor and Miller's TLC, Inc. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} This matter arises from a truck-automobile accident that occurred on November 26, 2007, at the intersection of East 30th Street and Broadway Avenue at approximately 9:00 a.m. in Cleveland, Ohio. The accident occurred when defendant-appellee, Robert Taylor, was making a left-hand turn from Broadway Avenue onto East 30th Street while operating an 18-wheel tractor-trailer truck. Plaintiff-appellant, Donna Dickerson, was traveling in the opposite direction on Broadway Avenue and collided into the side of the tractor-trailer before Taylor was able to complete the left-hand turn.

{¶3} On July 22, 2008, Dickerson filed a complaint against Taylor and his employer, Miller's TLC, Inc. The complaint alleged that Taylor, while in the course and scope of his employment, negligently operated his motor vehicle, causing injuries and lost wages to Dickerson and her son, Darwin Dickerson. On January 12, 2009, the case was dismissed without prejudice. On January 21, 2010, the action was refiled, and the matter proceeded to jury trial on January 24, 2011.

**{¶4}** Taylor was deposed on October 7, 2008, in the prior dismissed and refiled case. At Taylor's deposition, he testified: "I saw two vehicles cresting the hill in the distance," but he felt he had sufficient time to safely complete his left-hand turn. As he was proceeding through his turn, he observed that one of the cars was traveling much faster than the other car. The faster moving car was Dickerson's, which ultimately struck him. By the time Taylor realized that Dickerson's "vehicle was flying towards me," he was already making the turn and had no opportunity to avoid Dickerson. Taylor's testimony on these facts was consistent at his deposition and at trial.

**{¶5}** At trial, Taylor was asked on cross-examination during Dickerson's case-in-chief to recall testimony he made during his deposition relating to the distance between Dickerson's vehicle and the intersection where he began his left-hand turn. Taylor testified that, as stated during his deposition, he believed Dickerson's vehicle was approximately 50 yards, or 150 feet, away from the intersection when he began his left-hand turn. Additionally, Taylor estimated that Dickerson was traveling approximately 40 to 50 miles per hour.

**{¶6}** Dickerson testified that at approximately 8:45 a.m. on November 26, 2007, she was traveling westbound on Broadway Avenue with her son, en route to her place of employment in downtown Cleveland, Ohio. While driving on Broadway Avenue, Dickerson noticed Taylor's truck in the opposite lane, but continued toward the intersection while traveling approximately 35 miles per hour because the traffic light was green. Dickerson testified that as she entered the intersection, Taylor's truck suddenly

turned in front of her. Dickerson attempted to swerve away from the truck, but was unable to avoid a collision. Dickerson was transported by EMS to MetroHealth Medical Center, where she underwent surgery to repair her severely damaged left leg. Dickerson testified extensively to her continuing pain and suffering as a result of this accident.

{¶7} On direct examination, as part of Dickerson's case-in-chief, Taylor altered his testimony relating to Dickerson's distance from the intersection after he had the opportunity to revisit the scene of the accident and utilize the measurement components of a Google Map application on his personal cell phone. Taylor testified that, based on the calculations provided by the Google Map application, he estimated that Dickerson's vehicle was approximately 250 to 300 feet from the intersection when he began his left-hand turn. Dickerson's attorney moved for a mistrial based on Taylor's use of the Google Maps application as an expert witness who had not been qualified and on the basis that Taylor conducted a mid-trial site visit, which was not disclosed to Dickerson. The motion for mistrial was overruled.

{¶8} On January 27, 2011, the jury returned a verdict, awarding Dickerson damages in the amount of $136,665.38. However, the jury reduced the damages by Dickerson's 50 percent comparative fault, rendering a net verdict in the amount of $68,333. Thereafter, Dickerson filed this timely appeal, raising two assignments of error for review:

> I. The trial court committed prejudicial error when it admitted the testimony of Robert Taylor, defendant, as to the distance from his truck to the Dickerson automobile where that testimony was based solely upon Mr. Taylor's use of Google Maps application on his I-phone.

II.  The trial court committed prejudicial error when it permitted Robert Taylor to testify as to a distance based upon his visit to the site the day before the trial which was not disclosed in pretrial discovery.

Law and Analysis

I.  Admission of Prejudicial Evidence

{¶9} In her first assignment of error, Dickerson argues that the trial court committed prejudicial error when it permitted Taylor to testify as to the distance from Dickerson's vehicle to the center of the intersection where that testimony was based solely on Taylor's use of a Google Maps application on his personal cell phone.

{¶10} A trial court has broad discretion concerning the admission or exclusion of evidence, and, in the absence of an abuse of such discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904; *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991); *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240 (noting a trial court abused its discretion when it "acted unreasonably, arbitrarily, or unconscionably").

{¶11} Initially, Dickerson contends that Taylor's testimony relating information he obtained from the Google Maps application constituted inadmissible hearsay.  During Taylor's direct examination, the following statements were made:

Q: Did you do anything to determine the distance from * * * the point where you first saw Miss Dickerson to the intersection?

A. Yes. I wanted accurate measurements, so I took it upon myself to Google that map and put it at different points and measure what the distances were.

Q. Okay. And what figures did your Googling reveal?

PLAINTIFF'S ATTORNEY: Objection, Your Honor.

THE COURT: Overruled.

Q. Okay.

A. From approximately the center of the intersection down to right at the point where it starts, where you can see the curve, it is 250 feet.

* * *

Q. So based on those figures, were you able to more accurately calculate the distance that Miss Dickerson was from you when you first saw her?

A. Absolutely. If I were on this side of the intersection and I could see beyond the corner a little bit, to the hill, easily it was 300 feet, which is basically a hundred yards, double of what I had anticipated.

**{¶12}** Upon review of the record, we find that Taylor's testimony relating to information he received from the Google Maps application on his cell phone was not hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). A "statement" is an oral or written assertion, or nonverbal conduct of a person, if it is intended by the person as an assertion, while the "declarant" is a person who makes a statement. Evid.R. 801.

**{¶13}** By its very nature, calculation of distance, or of weight, volume, speed, and the like, is impossible without use of a tool that has been calibrated to show a relevant unit of measure, e.g., a ruler, a tape measure, a wheel, a scale, or, at a more sophisticated

level, a radar gun, a breathalyzer, or a blood test. When employed to measure something, none of those tools makes a "statement." *See Commonwealth v. Whitlock*, 74 Mass.App.Ct. 320, 906 N.E.2d 995 (2009). Instead, the only "statement" is the testimony of a witness about observations of distance, speed, weight, percentage, or volume he made as a result of using the tool. *Id.*

{¶14} Here, the Google Maps application was a measuring tool that utilizes computer-generated satellite images to calculate the distance between two points. Taylor's testimony about the computer-generated measurements constituted a declaration, made under oath at trial, of the physical observation he made from the Google Maps application. Therefore, the testimony was not hearsay. *See Gray v. Fairview Gen. Hosp.*, 8th Dist. No. 82318, 2004-Ohio-1244, ¶ 11 (testimony concerning the computer-generated results of a mammogram learned from a computer-aided detection (CAD) device was not hearsay because the CAD device was not a person).

{¶15} Next, Dickerson contends that the trial court impermissibly allowed Taylor to testify about the information he obtained from the Google Maps application without Taylor being certified as an expert witness. We disagree.

{¶16} In *State v. Franklin*, 164 Ohio App.3d 758, 2005-Ohio-6854, 843 N.E.2d 1267 (12th Dist.), the prosecution sought to prove that a drug sale occurred within 1,000 feet of a school. To do so, the prosecution proffered a witness who described the global imaging software that he used to measure the distance between the drug sale and the school. The defendant argued that the global imaging software must be supported by

expert testimony. The *Franklin* court disagreed, stating: "Global imaging devices are widely used and generally considered to be reliable." *Id.*, citing Dischinger & Wallace, *Geographic Information Systems: Coming to a Courtroom Near You*, 34 Colo.Law. 11, 17 (2005) ("[t]he * * * software has been in use for a relatively long period [more than two decades] and is generally accepted by the courts as reliable computer software").

{¶17} Similarly, Google Maps, and other satellite imaging programs, are generally considered to provide accurate and reliable measurements. In today's technologically savvy society, satellite imaging programs are used on a daily basis, and testimony concerning the use and output of such programs does not require information beyond the knowledge or experience possessed by most lay persons. *See Franklin*, ¶ 11; *Commonwealth v. Suarez-Irizzary*, 15 Pa.D.&C.5th 106 (Pa.Commw.2010) ("As technology increases, the law must keep pace. When maps were first created, they represented a cartographer's 'best estimate' of where things were located. Since then, measuring wheels, odometers, airplane photography and now global satellite imaging have moved cartography from the realm of human estimating to satellite-verified pinpoint accuracy. When the legal system needs to establish distance with precision, it should not eschew the accuracy that technology now affords in favor of more flawed and primitive means of measurement").

{¶18} In this matter, Taylor simply described how the application works and how he used its measurement components to calculate the distance between the intersection and Dickerson's vehicle at the time he began his left-hand turn. Therefore, the evidence

obtained from the Google Maps application was not scientific evidence that required expert testimony.

{¶19} Based on the foregoing, we find that the trial court did not abuse its discretion in permitting Taylor to testify to measurements he derived through the use of a Google Maps application on his personal cell phone.

{¶20} Dickerson's first assignment of error is overruled.

## II. Admission of Newly Discovered Evidence

{¶21} In her second assignment of error, Dickerson argues that the trial court committed prejudicial error when it permitted Taylor to testify as to a distance based on his visit to the site of the accident on the day before trial. Dickerson contends that the failure to disclose newly discovered evidence, developed on the eve of trial and in violation of pretrial discovery requests, constitutes unfair surprise and prejudicial error.

{¶22} In the case sub judice, we are unable to conclude that Taylor's statements relating to his use of the Google Maps application amounted to an unfair surprise where Dickerson's counsel originally questioned Taylor about the distance between Dickerson's vehicle and the intersection during its case-in-chief. Moreover, Dickerson did not suffer prejudice from any potential unfair surprise resulting from Taylor's testimony. The record reflects that the trial court provided Dickerson's counsel with the opportunity to conduct its own measurements in order to refute the computer-generated calculations. Dickerson's counsel chose not to make measurements on their own behalf and may not now retroactively complain that they were prejudiced.

**{¶23}** Dickerson's second assignment of error is overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR