[Cite as *State v. Gilbert*, 2018-Ohio-1883.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 17CA011209 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAMONE GILBERT | LORAIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 2017CRB02009 |

DECISION AND JOURNAL ENTRY

Dated: May 14, 2018

TEODOSIO, Judge.

{¶1} Appellant, Ramone Gilbert, appeals from his conviction for aggravated menacing in the Lorain Municipal Court. This Court affirms.

I.

{¶2} Mr. Gilbert wrote a song and performed it in a music video with his brother ("O.G."). Mr. Gilbert sang the lyrics while O.G. played a ukulele. The song was filmed by third person, and O.G. posted it on his Facebook page. The song included lyrics referencing Mr. Gilbert kicking in the door to his "baby momma's house," tying her up with her kids and the "dude she started sleepin' with[,]" dousing them all in gasoline, and lighting up a cigarette. The song culminates with Mr. Gilbert repeatedly uttering the line, "If you f**k me over, I'm gonna kill you." Mr. Gilbert and the mother of his only children ("R.C.") were involved in a custody dispute at the time the video was posted. R.C.'s cousin saw the video on O.G.'s Facebook page and showed it to R.C. on a cell phone. R.C. then reported the video to the police.

**{¶3}** Mr. Gilbert was later charged with aggravated menacing and telecommunications harassment. Following a bench trial, the trial court found Mr. Gilbert guilty of aggravated menacing, but not guilty of telecommunications harassment. The court sentenced him to 180 days in jail and ordered him to pay a $200.00 fine. The court suspended 106 days of the sentence and granted him 74 days of jail-time credit. Mr. Gilbert was placed on intensive supervised probation for two years and was ordered to have no contact with R.C.

**{¶4}** Mr. Gilbert now appeals from his conviction and raises two assignments of error for this Court's review.

II.

<u>**ASSIGNMENT OF ERROR ONE**</u>

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

<u>**ASSIGNMENT OF ERROR TWO**</u>

THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

**{¶5}** In his first and second assignments of error, Mr. Gilbert argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Although sufficiency and manifest weight are two separate, legally distinct arguments and should be argued separately, Mr. Gilbert has chosen to argue them together in his brief, and we will therefore address them together. While we disagree with both his sufficiency and manifest weight arguments, we are compelled to note that our decision is based solely on the specific

arguments presently before us and does not stand for a blanket proposition that a song containing threatening lyrics, which is posted on the Internet and eventually seen by the intended victim of the threats, always constitutes aggravated menacing under Ohio law.

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶7} Mr. Gilbert was convicted of aggravated menacing under R.C. 2903.21(A), which states, in part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶8} Mr. Gilbert argues that the State did not present sufficient evidence to prove that the statements in his song were made directly to R.C. or were made to people he knew or should have known would communicate them to R.C. This Court has stated that "R.C. 2903.21 is clear and unambiguous on its face and does not impose a requirement that the threat of harm must be uttered directly to the intended victim." *State v. Knoble*, 9th Dist. Lorain No. 08CA009359, 2008-Ohio-5004, ¶ 13. Consequently, Mr. Gilbert's argument that the statements were not made directly to R.C. is without merit. Instead, we will focus our analysis on Mr. Gilbert's argument that there was insufficient evidence to prove his statements were made to people he knew or should have known would communicate them to R.C.

{¶9} R.C. testified at trial that her cousin showed her the music video on O.G.'s Facebook page on a cell phone while they were at her mother's house in Lorain. She testified that she contacted the police because she was scared and frightened that Mr. Gilbert was threatening her life and the lives of her children in his song by stating he would "burn [them] up." On cross-examination, she testified that she now feels frightened for her life. Lorain Police Officer Marcus Haring testified that R.C. was upset and concerned when she brought the music video to the police department. Although R.C. is not mentioned specifically by name in the song, she testified that she felt the song was referring to her because of the statement that Mr. Gilbert "kicked [her] door in." She did not, however, elaborate any further as to whether Mr.

Gilbert has, at any time, actually kicked in the door to her home. She testified that she is Mr. Gilbert's only "baby mom" and they were on "bad terms" with each other at the time, as they were involved in a pending custody case. R.C. testified that she has friends and family who have access to both Mr. Gilbert's and O.G.'s Facebook pages and that she would expect to receive any messages posted on those two pages.

{¶10} The music video was played in open court at trial and entered into evidence. In the video, Mr. Gilbert first gives a brief preamble to the song:

> Yeah, it's your boy, Big 'Mone, still holdin' it down for the 44052. I had to switch it up on you guys. I wanna give a shout out to Odie and my n***a, Noah, for helpin' me out wit' this. I want you guys to like my videos and share this s**t, man. Real talk.

The song itself contains the following lyrics:

> I kicked the door in my baby momma's house. 'Cause that b***h was "ho-ing." She started to f**k around. Now I'm out in the cold, man, and I don't know what to do. Now I'm all alone, man, and I'm feelin' really blue.
>
> So, I look to the sky and I'm wonderin' why my life got twisted up in one big, fat lie. But, the pain is so real, I have to drink a beer. And I'm asking everybody do you feel like I feel?
>
> So, when I catch the dude she started sleepin' with, I'm-a find him and her, tie 'em up with their little kids. I'm-a douse 'em all in gasoline today, and I'm-a light up a cigarette just for the hey. And when they all burn like a perm, I'm-a be laughin' like a giant 'cause it hurts. What they did to me, they broke me down. But, when I get f****n' pissed, I'm gonna burn 'em all down.
>
> So, I kicked the door in to my baby momma's house. 'Cause that b***h was "ho-ing" and she started to f**k around. Now I'm out in the cold, man, and I don't know what to do. Now I'm all alone, man, and I'm feelin' really blue.
>
> I kicked the door in to my baby momma's house. 'Cause that b***h was "ho-ing." She started to f**k around. Now I'm all alone, man, and I don't know what to do.
>
> So, if you f**k me over, I'm gonna kill you. If you f**k me over, I'm gonna kill you. If you f**k me over, I'm gonna kill you.

But, I kicked that door in.

**{¶11}** Mr. Gilbert testified that he is an artist and a performer, and that he did not write the song in question about anyone in particular, as there are millions of baby moms in the world and he never said R.C's name in the song. He claimed he never refers to R.C. as his baby mom, as she is instead simply the mother of his children. He admitted that R.C. is the mother of his *only* children. He acknowledged the custody dispute with R.C., but testified that the children were living with him at the time. R.C. testified, however, that Mr. Gilbert was not seeing his children at that time. Mr. Gilbert explained that the lyrics in the song are actually a metaphor:

> [T]he baby mom in the song is basically the world, like, the pain that I'm going through. You know what I'm saying? And with that being said, the metaphor being that as the baby mom. When I said, "kick the door in," that's me just kicking away all my problems and my pains and how, how everything is going on in my life.

**{¶12}** Mr. Gilbert testified that the song was not finished, but he agreed that it was his intent to post the song online when it was finished. He admitted that he commonly posts videos on his Facebook page, and stated, "[I]f you go to – – go to my page, you will see there's plenty, plenty more videos of me saying this and that." However, he testified that R.C. cannot go to or view his Facebook page because she is "blocked." R.C. admitted on cross-examination that Mr. Gilbert blocked her access to his Facebook page, but she also testified that she is not blocked from O.G.'s Facebook page. Mr. Gilbert testified that he did not know his brother was going to post the video, but stated that his brother supports everything he does.

**{¶13}** After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, that Mr. Gilbert committed the offense of aggravated menacing. We further conclude that any rational trier of fact could have found all of the essential elements of aggravated menacing proven

beyond a reasonable doubt. The evidence presented at trial demonstrated that Mr. Gilbert's music video contained threats of serious physical harm to R.C. and her children. Mr. Gilbert sang of kicking in the door to his baby momma's house, tying her up with her kids and another man, then dousing them all in gasoline and lighting a cigarette. He then repeats the threat: "If you f**k me over, I'm gonna kill you." The lyrics in the song scared and frightened R.C., who believed the threats were directed toward her, as she is the mother of Mr. Gilbert's only children and was on bad terms with him since the two were involved in a pending custody dispute.

{¶14} Although Mr. Gilbert did not personally hold the video camera or cell phone used to record the video, and although the video was not posted on his personal Facebook page, we nonetheless conclude that sufficient evidence was presented to support a finding that Mr. Gilbert knowingly committed this offense. He wrote the lyrics and sang them in a recorded and shared video performance. He admitted to commonly posting "plenty" of his music videos on his Facebook page and conceded his intent to post a video of this particular song online once it was finished. The pending custody dispute between Mr. Gilbert and R.C. also added some noteworthy context to the threatening nature of the song lyrics. At the beginning of the video, Mr. Gilbert explicitly states that he wants people to like *and share* his videos, so we cannot conclude that he was ignorant or unaware his music video would circulate amongst people whom he knew or should have known would eventually share it with R.C. While R.C. was blocked from viewing Mr. Gilbert's Facebook page, she was not blocked from viewing O.G.'s Facebook page, and she testified that she expected to be made aware by friends and family of any messages posted on either of the brothers' Facebook pages. We conclude that Mr. Gilbert's sufficiency argument is without merit.

**{¶15}** Mr. Gilbert also argues that his conviction is against the manifest weight of the evidence. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶16}** After reviewing the record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice and we therefore conclude that Mr. Gilbert's conviction is not against the manifest weight of the evidence. The trial court judge stated that he believed Mr. Gilbert made serious threats of physical harm in the video directed toward R.C., and he explicitly rejected Mr. Gilbert's claim that the song is simply a metaphor. "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 (1967), paragraph one of the syllabus. In resolving any conflicts in testimony presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness. *See Haydon* at ¶ 28. The trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those

observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30.

**{¶17}** The trial court judge admitted concern regarding *how* the threats were communicated, but explained that the video was posted by Mr. Gilbert's brother, and the two men performed music together and posted a lot of videos together. The court determined that Mr. Gilbert knew the video would be posted, just like the brothers' other videos, and that Mr. Gilbert knew R.C. would eventually see it. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *E.g.*, *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. Mr. Gilbert has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387. We conclude that Mr. Gilbert's manifest weight argument is without merit.

**{¶18}** Mr. Gilbert's first and second assignments of error are overruled.

III.

**{¶19}** Mr. Gilbert's first and second assignments of error are both overruled. The judgment of the Lorain Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

PATRICK D. RILEY, Law Director, and JOSEPH T. LAVECK, Assistant Law Director, for Appellee.