[Cite as *State v. Klafczynski*, 2020-Ohio-3221.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

BENJAMIN KLAFCZYNSKI

    Appellant

C.A. No.     18CA0084-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    17CR0268

DECISION AND JOURNAL ENTRY

Dated: June 8, 2020

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Benjamin Klafczynski, appeals from his conviction for tampering with evidence in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2}    Mr. Klafczynski was a teacher and golf coach at Wadsworth High School ("the school"). A female student of the school ("L.S.") began babysitting Mr. Klafczynski's son, so the two exchanged phone numbers and purportedly became friends on the Snapchat app. L.S.' boyfriend ("J.T.") was on the school's golf team. According to L.S., Mr. Klafczynski would occasionally comment on how nice she looked or how nice her breasts or dress looked. During one particular golf match, Mr. Klafczynski accompanied L.S. to the clubhouse bar to get some water for the team, and he allegedly said to her, "If I would have known this was our first date, I would have dressed nicer." According to L.S., Mr. Klafczynski would hug her frequently, "maybe five times a week." She claimed that, while students were playing Mario Kart in class one day,

Mr. Klafczynski touched her upper, inner thigh. L.S. further alleged that Mr. Klafczynski exchanged inappropriate pictures with her through Snapchat, including Mr. Klafczynski sending a shirtless picture of himself, and L.S. sending a picture of herself in a bra and panties and a nude picture of her buttocks and vagina. L.S. told both J.T. and a female friend about what happened, and Mr. Klafczynski soon talked to both J.T. and L.S. separately about how to move forward.

{¶3} Once the school and police were made aware of the allegations, they launched an investigation. When Mr. Klafczynski's phone was searched pursuant to a warrant, no illicit photos, contact information for L.S., or Snapchat app were found on his phone. Police did, however, discover Snapchat logs on the phone. When the school's principal searched Mr. Klafczynski's desk, he found a Post-it note allegedly written in Mr. Klafczynski's handwriting, stuck to the bottom of a box of Mr. Klafczynski's business cards, that listed, numerically: (1) Coming over?; (2) Snapchat; delete; last pics / "good" message; (3) Moving forward.

{¶4} Mr. Klafczynski was charged with tampering with evidence, sexual imposition, and illegal use of a minor in nudity-oriented material or performance. After a jury trial, he was found guilty of tampering with evidence, but not guilty of the remaining two charges. The trial court sentenced him to five years of community control.

{¶5} Mr. Klafczynski now appeals from his conviction and raises five assignments of error for this Court's review. We have reorganized his assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR FOUR**

THE JURY'S FINDING OF GUILT AND THE ACCEPTANCE OF THE FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶6}** In his fourth assignment of error, Mr. Klafczynski argues that his conviction for tampering with evidence was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

**{¶7}** "A challenge to the sufficiency of the evidence concerns the State's burden of production, while a challenge to the manifest weight of the evidence concerns the State's burden of persuasion." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Although sufficiency and manifest weight are two separate, legally distinct arguments and should be argued separately, Mr. Klafczynski has chosen to argue them together in his brief, and we will therefore address them together. *See, e.g., State v. Gilbert*, 9th Dist. Lorain No. 17CA011209, 2018-Ohio-1883, ¶ 5; *State v. Dean*, 9th Dist. Lorain No. 18CA011290, 2019-Ohio-1391, ¶ 5.

**{¶8}** Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶9}** When reviewing a manifest weight challenge,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶10} Mr. Klafczynski was convicted of tampering with evidence under R.C. 2921.12(A)(1), which states: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."

{¶11} R.C. 2901.22(B) states:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

"A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof, but can be determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and

probable consequences of their voluntary acts. *State v. Garner*, 74 Ohio St.3d 49, 60 (1995). "Likelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. The State need not set forth direct evidence of a tampering with evidence offense; circumstantial evidence may suffice. *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 8.

{¶12} Mr. Klafczynski argues that the State failed to demonstrate that any information was tampered with or deleted from his cell phone. He also argues that the Snapchat app was not on his phone when it was searched and no evidence was presented as to when the Snapchat app was deleted from his phone.

{¶13} L.S. testified as to how the Snapchat app works or operates. Although Mr. Klafczynski contends in another assignment of error that L.S. should not have been permitted to testify as to how Snapchat works, the Supreme Court of Ohio has emphasized that "the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not." *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-M and 11CA0087-M, 2012-Ohio-4428, ¶ 18, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19.

{¶14} At trial, L.S. testified about Snapchat as follows: "So how it works is you take a picture, and it's supposed to disappear within a few seconds and you can't see it again. Same with messages, unless you hold it down to save it." She testified that pictures and messages are saved "[i]f you take a screenshot on your phone." L.S. elaborated further that "[w]hen you take a screenshot on Snapchat, it sends, like, a notification to your phone saying that that person had screenshotted your picture or message or anything like that." L.S. testified that she had sent pictures of herself to Mr. Klafczynski through Snapchat, including a picture of her in her bra and

panties and a nude picture of her buttocks and vagina. She then testified that she received notifications from Snapchat that Mr. Klafczynski had saved some of her pictures, although she admittedly could not recall exactly which pictures he had saved.

{¶15} Many screenshots of Mr. Klafczynski's Snapchat conversations with L.S., taken from L.S.' phone, were entered into evidence at trial. The conversations are somewhat incomplete, and L.S. testified that she did not save some of her messages to Mr. Klafczynski in time, before Snapchat automatically deleted them. Some of Mr. Klafczynski's messages appear to discuss the importance of deleting information from their phones, including: "It would be awful if someone had are (sic) phones"; "Deleting this lol"; "Btw those messages won't delete permanently"; "I deleted the convo but when I search your name it comes back"; and "If I delete you then they don't show for now[.]" At one point, Mr. Klafczynski says, "No pics though," which L.S. testified was in regard to their Snapchat pictures being saved on his phone but not saved in the Snapchat app. Mr. Klafczynski also makes several comments seemingly instructing L.S. on how to delete things off of her own phone, including: "It (sic) saying if u tap the message it saves. The red and blue lines have to be thin not thick for them to delete"; "Try holding them down"; "Are they gone for you if u search me under messages?"; "Are they deleted?"; and "Ok I'll figure it out. I'll show ya tomorrow and I (sic) help lol[.]" L.S. testified that these particular comments were in reference to Mr. Klafczynski taking her phone and deleting anything she had saved on it. She testified that Mr. Klafczynski, as her teacher, could take her phone at any point, and that he, in fact, did take her phone to try to delete "stuff."

{¶16} On December 5, 2016, around noon, J.T. surreptitiously recorded on his own phone his conversation with Mr. Klafczynski about what happened between L.S. the teacher, and his three videos were introduced into evidence. J.T. tells Mr. Klafczynski that L.S. admitted "it" to

him and he saw the Snapchat messages. He explains that before he does something he might regret he wanted to first talk to Mr. Klafczynski, man to man. Mr. Klafczynski replies, "I appreciate that, 'cause I like my job and I would never do anything to put my job in jeopardy * * * as long as we're squared with that." Mr. Klafczynski can be heard repeatedly offering his phone to J.T. to show him that he does not have Snapchat.

{¶17} A female friend of L.S.' recorded a separate video of a phone call between Mr. Klafczynski and L.S. on December 5, 2016, which was also entered into evidence. In that phone call, while on speakerphone, Mr. Klafczynski tells L.S. he wanted to "make sure that the conversation was deleted." He also says, "I deleted my Snapchat, so I told [J.T.] I didn't have that, just so you know."

{¶18} Officer Joshua Cooper of the Wadsworth Police Department, who specializes in digital forensics, testified at trial as to his extensive training and certifications. He testified that he used two separate Cellebrite programs while completing both logical and file system extractions of data from Mr. Klafczynski's cell phone. According to Officer Cooper, the Snapchat app was not installed on Mr. Klafczynski's phone when he searched it, but he found an email regarding a password change for Snapchat. He also found fifteen entries or logs in the phone's database when he searched for "Snapchat," which he testified meant Snapchat had been used on the phone. Officer Cooper did not discover any photos on the phone of Mr. Klafczynski shirtless, nor did he find any photos of L.S. either nude or in her bra and panties. He did, however, find picture files in the JPEG format which contained zero kilobytes of data. He testified that this indicated there had been pictures there which were no longer there. According to Officer Cooper, the last entry or log for Snapchat in Mr. Klafczynski's phone occurred on December 4, 2016, at 7:29 P.M. He testified that that was the last time the phone's data was being used for the Snapchat app.

{¶19}   The school's principal, Steve Moore, testified that he first learned of the allegations in this case when he spoke to L.S., her mother, and Dr. Andrew Hill ("the superintendent") on December 5, 2016.  The superintendent placed Mr. Klafczynski on paid administrative leave that same night and they called the police.  Principal Moore testified that both the school and the police began investigations into Mr. Klafczynski's conduct.  The principal then went to Mr. Klafczynski's classroom to collect his belongings and found a Post-it note in the teacher's desk drawer.  The note was stuck to the bottom of a box of Mr. Klafczynski's business cards.  Principal Moore testified that he is familiar with Mr. Klafczynski's handwriting, and that he recognized the handwriting on the note to be Mr. Klafczynski's.  The note was entered into evidence and reads: (1) Coming over?; (2) Snapchat; delete; last pics / "good" message; (3) Moving forward.  Principal Moore also testified that Mr. Klafczynski resigned before the school's investigation could "play out."  He turned any information that he obtained over to the police for their criminal investigation.

{¶20}   Based on our review of the record, and in viewing the evidence in a light most favorable to the prosecution, we determine that the State presented sufficient evidence, if believed, that Mr. Klafczynski committed the offense of tampering with evidence.  L.S. testified that she sent illicit photos to Mr. Klafczynski through Snapchat, which were saved by Mr. Klafczynski.  The State presented evidence of communications between Mr. Klafczynski and L.S. regarding Mr. Klafczynski deleting Snapchat and other data from his phone.  Mr. Klafczynski admits being appreciative when J.T. talks to him first about the situation because he "like[s] [his] job."  Although neither Snapchat nor any illicit photos of L.S. remained on his phone when it was searched by police, evidence was presented that Snapchat had, in fact, been used on Mr. Klafczynski's phone up until the night of December 4, 2016.  He was placed on paid administrative leave on the following day.  A Post-it note found in Mr. Klafczynski's desk included apparent reminders

regarding Snapchat of "delete" and "last pics."  Although Mr. Klafczynski was ultimately acquitted of the sexual imposition and illegal use of a minor in nudity-oriented material or performance charges, both the school and the police immediately began investigations once those allegations were brought to their attention.

{¶21} Thus, the evidence presented at trial, if believed, demonstrated that Mr. Klafczynski, knowing that an official proceeding or investigation was about to be or was likely to be instituted, deleted data from his phone to purposefully impair its value or availability as evidence in such proceeding or investigation.  This Court therefore concludes that a rational trier of fact could have reasonably determined all of the elements of tampering with evidence were proven beyond a reasonable doubt.  *See Jenks* at paragraph two of the syllabus.

{¶22} Regarding his challenge to the manifest weight of the evidence, Mr. Klafczynski argues that the evidence presented at trial demonstrated that the Snapchat app itself automatically deletes images and messages; thus, he could not have deleted such data himself.  He appears to concede, however, that this automatic deletion by the app occurs "unless the user saved it."  He also offers no explanation for how this argument extends to the deletion of the Snapchat app itself.

{¶23} L.S. did testify that Snapchat pictures and messages disappear from the app within seconds once sent and cannot be retrieved again.  But, she also testified that users may choose to screenshot or save pictures and messages, and the app thereafter sends a notification to the sender that the picture or message was saved.  She further testified that she did, in fact, receive Snapchat notifications that Mr. Klafczynski had saved some of her pictures.  The evidence also showed that Mr. Klafczynski made many comments to L.S. regarding deleting Snapchat from his phone and deleting data from both of their phones.  L.S. testified that Mr. Klafczynski, in fact, took her phone

at one point and tried to delete "stuff." The school's principal also found a note to delete Snapchat and "last pics" in Mr. Klafczynski's school desk drawer.

{¶24} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Mr. Klafczynski's conviction must be reversed. *See Otten*, 33 Ohio App.3d at 340. Mr. Klafczynski has also not shown how this is an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387.

{¶25} Overall, we cannot say that Mr. Klafczynski's conviction was based on insufficient evidence or was against the manifest weight of the evidence. Mr. Klafczynski's fourth assignment of error is therefore overruled.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT VIOLATED MR. KLAFCZYNSKI'S CONSTITUTIONAL RIGHTS WHEN IT DENIED MR. KLAFCZYNSKI'S MOTION TO EXAMINE EXCULPATORY EVIDENCE.

{¶26} In his first assignment of error, Mr. Klafczynski argues that the trial court erred in denying his request for an independent examination of L.S.' cell phone. We disagree.

{¶27} "A trial court's resolution of discovery issues in criminal matters is reviewed for an abuse of discretion." *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 14. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶28} If the State withholds material, exculpatory evidence, it offends a criminal defendant's due process rights. *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 32, citing *Brady v. Maryland*, 373 U.S. 83 (1963). "'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 31, quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). "It is [the] [d]efendant's burden to establish that the evidence is both favorable and material and that there is reasonable probability that the outcome would have been different if the evidence had been provided." *State v. Whalen*, 9th Dist. Lorain No. 08CA009317, 2008-Ohio-6739, ¶ 8.

{¶29} Mr. Klafczynski filed a pretrial motion for an independent forensic examination of both his phone and L.S.' phone, and the trial court held a hearing on the matter. Although the trial court ultimately permitted an independent forensic examination of Mr. Klafczynski's own phone, it denied his motion to the extent that he sought to have L.S. turn over her phone for his examination.

{¶30} Mr. Klafczynski argues that L.S.' phone contained material and exculpatory evidence, e.g., "communications" and nude pictures that may *or may not* be there. Interestingly enough, he also claims that he should have been permitted to examine the phone "to determine *if* the phone contained any exculpatory information." (Emphasis added.). "[A] defendant cannot establish a due process violation by speculating about the existence, content, and disposition of evidence." *Jalowiec* at ¶ 49.

{¶31} This Court also fails to see how any potential evidence retrieved from L.S.' phone would be either exculpatory or material to Mr. Klafczynski's tampering with evidence conviction. "Exculpatory evidence" is evidence favorable to the accused which, if disclosed and used effectively, may make the difference between conviction and acquittal. *Whalen* at ¶ 8. Undisclosed evidence is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Jalowiec* at ¶ 31.

{¶32} Mr. Klafczynski was convicted of tampering with evidence based on allegations that he deleted evidence off of *his own* phone. It follows that any potential evidence recovered from L.S.' phone would neither exculpate Mr. Klafczynski from the crime of tampering with evidence on his own phone nor establish a reasonable probability that a different result would have occurred at trial. The results of any examination of L.S.' phone would not be favorable to Mr. Klafczynski. If illicit communications and pictures were found on L.S.' phone, such a discovery would, perhaps, provide even *more* evidence of Mr. Klafczynski's guilt. If her phone was instead devoid of any such communications and photos, the absence of such evidence would still bear no effect on whether Mr. Klafczynski tampered with evidence on *his own* phone.

{¶33} Because Mr. Klafczynski has not demonstrated how this speculative evidence would be favorable or material and has not shown a reasonable probability that the outcome would have been different if the evidence had been provided, we cannot say that the trial court erred or abused its discretion in denying his motion to examine L.S.' phone for exculpatory evidence. *See Whalen* at ¶ 8.

{¶34} Mr. Klafczynski's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING TESTIMONY REGARDING SNAPCHAT FROM A WITNESS WHEN THERE

WAS A LACK OF FOUNDATION AND LACK OF QUALIFICATION OF THE TESTIFYING WITNESS.

{¶35} In his second assignment of error, Mr. Klafczynski argues that the trial court erred in permitting L.S. to testify about "the procedures and uses of Snapchat[,]" as her testimony was "beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." We disagree.

{¶36} The trial court has broad discretion in the admission and exclusion of evidence, including the determination as to whether an individual is an expert, and this Court will not disturb evidentiary rulings absent an abuse of that discretion. *State v. Hickman*, 9th Dist. Summit No. 20883, 2002-Ohio-3406, ¶ 11. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶37} A witness may testify as an expert if: (1) her testimony "either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;" (2) she "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;" and (3) her testimony "is based on reliable scientific, technical, or other specialized information." Evid.R. 702.

{¶38} Mr. Klafczynski argues that the trial court permitted L.S. to present improper expert testimony as to the "procedures and uses of Snapchat[,]" which was "beyond the knowledge or experience possessed by lay persons or dispel[led] a misconception common among lay persons." He challenges her testimony that: Snapchat deletes pictures automatically after a few seconds; users can screenshot or save images; Snapchat notifies the sender when the receiver has saved the

sender's picture; and users may post a picture to their Snapchat "story." He notes that L.S. admitted she does not write computer code, nor does she understand how computers are programmed. Although she has a cell phone and downloaded the Snapchat app, she testified that she has no knowledge of where the data goes when it disappears.

{¶39} Mr. Klafczynski cites to no authority requiring expert testimony to establish or explain the basic functioning of the Snapchat app. *See* App.R. 16(A)(7). We likewise find no merit in his argument that L.S.' testimony as to Snapchat's basic functioning was scientific evidence elicited from an expert witness. *See, e.g., Dickerson v. Miller's TLC, Inc.*, 8th Dist. Cuyahoga No. 96995, 2012-Ohio-2493, ¶ 18 (determining witness testimony describing how the Google Maps app works is not scientific evidence requiring expert testimony). L.S. testified that she has used the app almost daily for years and simply described her basic understanding of how it works based on her personal experience while using it. Such testimony does not relate to matters beyond the knowledge or experience possessed by lay persons, nor does it dispel a misconception common among lay persons. *See* Evid.R. 702(A). The trial court therefore did not err in permitting L.S. to testify as to the basic functioning of the Snapchat app.

{¶40} Mr. Klafczynski's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

MR. KLAFCZYNSKI'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT IMPROPERLY RULED AND INSTRUCTED THE JURY PURSUANT TO R.C. 3319.31 AND R.C. 3319.311.

{¶41} In his third assignment of error, Mr. Klafczynski argues that the trial court erred by instructing the jury pursuant to R.C. 3319.31 and 3319.311. We disagree.

{¶42} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."

*State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶43} The State was burdened with proving that Mr. Klafczynski tampered with evidence at a time when he knew an "official proceeding or investigation" was in progress or was about to be, or was likely to be, instituted. *See* R.C. 2921.12(A). An "official proceeding" is "any proceeding before a legislative, judicial, administrative, or other governmental agency or official authorized to take evidence under oath, and includes any proceeding before a referee, hearing examiner, commissioner, notary, or other person taking testimony or a deposition in connection with an official proceeding." R.C. 2921.01(D). Although the term "investigation" is not statutorily defined, Black's Law Dictionary defines it as: "The activity of trying to find out the truth about something, such as a crime, accident, or historical issue; esp., either an authoritative inquiry into certain facts, as by a legislative committee, or a systematic examination of some intellectual problem or empirical question, as by mathematical treatment or use of the scientific method." Black's Law Dictionary (11th Ed.2019).

{¶44} At trial, Principal Moore testified that a lengthy process is involved in order for a teacher to be fired, which involves an investigation and a disciplinary hearing. He testified that inappropriate contact or communications between a teacher and a student is enough to warrant

such investigation and disciplinary proceedings. He agreed that while the school's investigatory process was started in this case on December 5, 2016, it did not actually "play out" because Mr. Klafczynski resigned from his teaching position in January of 2017. According to Principal Moore, had the school's investigation continued, a hearing would have been held in which the superintendent would first have everyone agree to tell the truth before speaking. He testified that he also contacted the police after he spoke with L.S. and her mother on the night of December 5, 2016, prompting a criminal investigation into Mr. Klafczynski's actions.

{¶45} The prosecutor requested additional jury instructions on R.C. 3319.31(B)(1) and 3319.311(C)-(D), which statutes pertain to the discretionary, disciplinary authority of the state board of education regarding certain licenses. "[T]he state board of education, in accordance with Chapter 119. and section 3319.311 of the Revised Code, may refuse to issue a license to an applicant; may limit a license it issues to an applicant; may suspend, revoke, or limit a license that has been issued to any person; or may revoke a license that has been issued to any person and has expired" if the person "[engages] in an immoral act, incompetence, negligence, or conduct that is unbecoming to [his] position * * *." R.C. 3319.31(B)(1). The state board of education—or the superintendent on behalf of the board—may investigate any information received about a person that reasonably appears to be a basis for action under R.C. 3319.31. R.C. 3319.311(A)(1). The superintendent reviews the results of the investigation and determines, on behalf of the state board, whether the results warrant initiating action under R.C. 3319.31(B), but no action is taken without first providing written notice of the charges and an opportunity for a hearing. R.C. 3319.311(B)-(C). For purposes of an R.C. 3319.311(A)(1) investigation or an R.C. 3319.311(C) hearing, the board—or the superintendent on behalf of the board—may administer oaths, order the taking of

depositions, issue subpoenas, and compel the attendance of witnesses and the production of books, accounts, papers, records, documents, and testimony. R.C. 3319.311(D).

{¶46} While arguing at sidebar against the admission of any testimony regarding any investigation and proceedings by the principal or superintendent, Mr. Klafczynski's counsel admitted, "We assumed [the official proceeding] was criminal. That's typically what the [tampering with evidence] statute * * * deal[s] with * * *." The prosecutor explained to the court, "There's going to be an investigation by the police, investigation by the school, and then potentially by the State Board of Education." Relying specifically on the Supreme Court of Ohio's decision in *E. Canton Edn. Assn. v. McIntosh*, 85 Ohio St.3d 465 (1999), Mr. Klafczynski objected to the additional, requested instructions and argued that an "official proceeding" for purposes of tampering with evidence does not apply to school principals or superintendents because neither one is a "public official" and neither one can "swear people in under oath" or "investigate anything." In *McIntosh*, the Supreme Court of Ohio noted that it had previously held that a public school superintendent is a public official, but had not yet considered the issue of whether a public high school principal is a public official for purposes of defamation law. *Id.* at 474, citing *Scott v. The News-Herald*, 25 Ohio St.3d 243 (1986), paragraph two of the syllabus. The high court discussed how courts in other jurisdictions are divided as to whether public school principals should be accorded "public official" status, but ultimately held that a public school principal is not a public official *for purposes of defamation law*. *Id.*

{¶47} While Mr. Klafczynski challenged the school's investigation and impending proceedings regarding his teaching license, he never challenged the police department's criminal investigation as not satisfying the "official proceeding or investigation" element for tampering with evidence. Principal Moore testified that both the school *and the police* began investigations

into Mr. Klafczynski's alleged, inappropriate relationship with L.S. On cross-examination, Principal Moore testified that the police arrived on December 5, 2016, and spoke to both him and the superintendent. When later asked if he personally interviewed people for disciplinary purposes regarding Mr. Klafczynski, the principal testified that he turned any information he had over to the police for their investigation. Moreover, although closing arguments are not evidence, defense counsel spoke openly about the criminal investigation during his closing argument, telling the jury "the investigation did not commence until after [Principal Moore] met with [L.S.] the evening of December 5th" and the principal "did the smart thing" and "turned that over to the Wadsworth Police Department." He explained that "the police are going to come in and interview the witnesses and do all of their investigation * * *."

{¶48} Accordingly, we cannot say that the trial court committed reversible error by instructing the jury as to R.C. 3319.31(B)(1) and 3319.311(C)-(D). Not only is Mr. Klafczynski's reliance on *McIntosh* for support misplaced, as the Supreme Court explicitly limited its holding in that case to defamation law, *see McIntosh* at 474, but ample evidence was presented to the jury indicating that the police began a criminal investigation in this matter on December 5, 2016. Even if we determined the trial court erred in providing additional instructions to the jury regarding the school's investigation, we would still need to determine if such error was harmless beyond a reasonable doubt. *See State v. Warner*, 55 Ohio St.3d 31, 58 (1990). *See also State v. Adams*, 74 Ohio App.3d 140, 144-145 (9th Dist.1991), citing *Chapman v. California*, 386 U.S. 18 (1967) and *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) (determining mandatory jury directives resulting in constitutional error may be harmless error, not necessarily requiring reversal of criminal convictions, "if the reviewing court can confidently determine from the whole record that the constitutional error was harmless beyond a reasonable doubt."). Based on the facts and

circumstances of this particular case, it appears that the additional jury instructions were merely superfluous. Irrespective of the school's investigation, the jury could have found beyond a reasonable doubt, based on the evidence presented at trial, that Mr. Klafczynski knew a criminal investigation by the police was about to be, or was likely to be, instituted. Thus, even if the trial court's decision to instruct the jury as to R.C. 3319.31(B)(1) and 3319.311(C)-(D) was error, we would conclude that it was harmless error beyond a reasonable doubt.

{¶49} Mr. Klafczynski's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FIVE

MR. KLAFCZYNSKI WAS DENIED HIS RIGHT TO DUE PROCESS AND OF EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶50} In his fifth assignment of error, Mr. Klafczynski argues that his trial counsel was ineffective for failing to object to the admission of exhibits of communications between himself and L.S. We disagree.

{¶51} "The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel." *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 22. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, even debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland* at 687.

Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶52} Mr. Klafczynski argues that the pictures of Snapchat conversations between himself and L.S. were "the most damaging evidence against [him,]" but were random, incomplete, and prejudicial, as some individual messages were missing. He argues that presenting such incomplete conversations to the jury allowed jurors to infer too much, and his trial counsel should have therefore objected.

{¶53} As a matter of law, the failure to object at trial may be justified as a trial tactic and thus does not sustain a claim of ineffective assistance of counsel. *State v. Miller*, 9th Dist. Summit No. 23240, 2007-Ohio-370, ¶ 10, citing *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995). "Strategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *Id.*, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶54} Here, the pictures were not completely devoid of any and all messages from L.S. Some of her messages to Mr. Klafczynski were included, but she explained on the witness stand that others were missing because she had not saved them in time before Snapchat automatically deleted them. Moreover, Mr. Klafczynski has not explained how any of the missing messages actually resulted in prejudice that deprived him of a fair trial. Even assuming arguendo that counsel should have objected to these exhibits, we would nonetheless conclude that the failure to do so did not affect the outcome of the trial in light of the overwhelming evidence presented

demonstrating that he deleted items of evidentiary value from his own phone. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 68, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 105 (finding no ineffective assistance of counsel where even if trial counsel objected and evidence was excluded, other evidence established facts giving rise to the defendant's conviction).

{¶55} Mr. Klafczynski's fifth assignment of error is overruled.

### III.

{¶56} Mr. Klafczynski's assignments of error are all overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶57} Although I agree with the majority's resolution of the first, second, fourth, and fifth assignments of error, I would resolve the third assignment of error solely on the basis of harmless error.

APPEARANCES:

KRISTOPHER IMMEL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.